At this time, would counsel for the appellant please introduce himself on the record to begin? Your Honors, Michael Sarli for the plaintiffs in this matter. Excuse me. We're here today to talk about the  appeal from the district court's denial of our motion for summary judgment and the granting of summary judgment for National Union in this case. By way of background, on December 1, 2018, my clients, the appellants, were passengers along with 29 other people in a school bus that for a student had owns and was registered and principally garaged in Rhode Island. The bus was insured by National Union. The bodily injury liability limits were $5 million. The policy was issued... Our first point, Your Honor, is that at the time there were rules in Rhode Island for all insurance companies doing business in Rhode Island, which National Union clearly was doing. And those rules required that when a claim for U.M. or U.I.M. coverage was being denied, that all the facts, that is all the conditions, all the provisions, or all the exclusions being relied upon by the insurance company needed to be stated in the denial letter. In this case, there was one ground and one ground only in the denial letter. That was that the U.M. U.I.M. policy had been rejected... Because it was permitted to be rejected. Why doesn't the permitted incorporate the conclusion that the statute is permissively read to permit them to reject? Because the statute does not permit them to. So that would be that they gave the ground, which was that it was permitted, and you're saying they were wrong in that ground because it wasn't permitted. Correct. So then the denial letter did give the ground. Correct. So then we get to the merits of is it permitted or not, not a waiver ground. The court said if a ground is not raised in the denial letter, you cannot, the insurance company cannot use that ground. The ground raised was that it's permitted to reject it. But that was clearly wrong. Okay. So then it was raised. Now we get to the merits of it. If they had simply said I deny it because the accident didn't occur, they couldn't now say, well, now under scaling I'm rejecting it because of this issued on delivery point. But at the time what they said is they rejected the coverage and they were permitted to do so. So they could only permit it to do so if it was lawful under the statute. So that's the argument. They think it's lawful under the statute to reject. It was not lawful under the statute. I know. So now we're on the merits. So is it or not? It is not lawful or not. Why not? Because simply put, there is only one condition that permits coverage, UIM coverage to be rejected by an insured. And that is if the bodily injury liability coverage is the minimal amount required under Rhode Island law, which is $25,000 per person. Maybe I'm misunderstanding. Isn't that only true if we read the statutes issued for delivery your way? You should not even be getting to issued for delivery because that is not the issue. The rules applying to all insurance carriers doing business require whatever the issue is for them to raise the issue. I understand that. I'm assuming they've raised it. Okay? I know you disagree. Assume they raised it. The issued or issued for delivery? Yes. So isn't the only issue in the case then is your reading of issued for delivery right or not? I think that would be correct if that was proper. But you're saying at the outset and we say scaling stays. That's the waiver point, right? And I'm asking you to, I totally understand it. If my colleagues want to ask you more about it, they're free to do so. But I'd like to get to the merits of your argument if we don't agree with you on scaling. Okay. If you don't agree with me on scaling, then with respect to the issued delivery or issued for delivery type of argument, I think there's ample evidence in the case that the intent of this part, the intent of certainly first student was to have UMUIM coverage apply because they had contracts, active contracts with school districts throughout Rhode Island, which required them to have $500,001 million of insurance, UMUIM insurance. So for first student to say that was not its intent, that it was going to rely upon an issued or delivered argument to negate that obligation, I think it's just not something a court could possibly grant. That's first student's point of view. With respect to national union's point of view, it had apparently a different intent. It didn't even know what the contracts first student had required in terms of UMUIM coverage. They simply said, as far as we are concerned, they checked the box and that was good enough. That's what the court said. That's what they were wanting to say in their rejection. Because the only thing they did when they sent the denial letter was they enclosed the actual printout of the first form where they rejected it. They never issued, they never at any point got to the issued or issued for delivery. I may have misunderstood your argument. What is your view of what was meant by permitted in the denial letter? Permitted in the denial letter was they were, there was a box they could check rejecting coverage. And that's why they enclosed with their denial letter that box, that form where they checked the box and said rejected. That was the only basis. Are you saying there are two separate ways in which you could not provide this coverage? One is if you're not registered or delivering the policy within the state, in which case the rule doesn't even apply to you. That's way one. Way two is if you are delivering the policy in the state, so you can't use way one. However, the insured could be permitted under that situation to reject the coverage if certain criteria is made. That's way two. Is that what you're saying? I don't think that's quite what I'm saying, Your Honor. Go ahead. I had a thought about maybe what you were saying, but you would know better than I would. I think what I was saying, Your Honor, is that the Supreme Court in scaling was faced with a denial of U.M., U.I.M. coverage, which it concluded was a breach of contract. Then there was a bad faith claim that was raised. One of the things that the insurance company tried to do was to bring in a fact that had not been included in the denial. And the Supreme Court said, listen, when you deny a claim, you must give every reason, every condition. That general principle I don't think you're getting any resistance on. It's the application of that principle. We're having, I'm at least having trouble understanding why saying that this was permitted isn't saying that 277-21A permits me not to provide it because the policy isn't delivered within the state. Because they never articulated that particular reason. What could permitted mean other than that? Your position is that it's impermissible always to deny because of how you read the statute. So what could they have meant other than that if they were saying it was permitted to do it? The statute itself, the U.M. statute, provides there is only one reason that you can reject U.M., U.I.M. coverage. And when it applies to you. Right. So if they say it's permitted, your idea is that they imagined it applied and then they had a wrong reason for thinking it was permitted? Is that the idea? And then you're saying all the extrinsic evidence supports that understanding of the denial letter? I believe that is indeed part of the case, Your Honor. But I just want to say, you're basically saying this case as a threshold matter turns on the interpretation of the denial letter. Yes. And you're saying it's not plausible to read permitted to mean what they now want it to mean. Correct. Because they had at the time were acting as if it applied. And their ground for saying it was a permissible rejection then was just a mistaken understanding of what they could do under the statute. That's why the testimony from the person who says I never read it, I didn't know about. That's why that's all matters. Exactly. I get it. So you're saying there's a threshold question about what did the denial letter mean and that at summary judgment it could be determined that permitted meant something totally different from on delivery, et cetera. So we would never get to the question of whether it is on delivery. Exactly. And I say this because the statute itself defines when the coverage can be rejected. And that's what they rejected. So that's what you're, the permitted is kind of a red herring here. Yeah. I think you're saying in the insurance denial letter they need to say why they were entitled to deny and what they said was first group elected to reject as it was permitted to do. And now you're saying they're not making an argument to us that they get off the hook because first group elected to reject. Because it wouldn't have been able to, they're making a whole different argument over here about where it was housed. A completely different argument. And you're just saying at least there's a triable issue of fact about whether the denial letter can be read as you want it to be read. At the very least. I go even further, though. I think that under the circumstances that given the way the statute is read and because they were doing business in Rhode Island, the rule for how an insurance company must act when it's doing business in Rhode Island, which it was doing here, was insuring buses. That rule requires all reasons for an insurance company to be able to do business in Rhode Island. It requires all reasons for a denial to be listed. Doesn't matter what the claim is. Doesn't matter whether it's a bad case. And you said that's background information that further makes the denial letter hard to read the way they want to read it. Exactly. And the Supreme Court in scaling, scaling two, basically said the remedy for this is the court cannot rely upon those extraneous reasons that were not articulated in the denial letter. And they define that basically in the rules as, you know, an unfair settlement practice. It's right in the rules about that. So you're saying, in effect, when you make the claim for this, they can't defend it by saying 27721A doesn't cover us because they didn't say that in the letter. Exactly. And so there wouldn't even be an issue for the court below a fact issue at all. Exactly. And I say the court overlooked all of this because in the court's decision, there is not one mention of why the rules applicable to all insurance companies doing business in the state denying coverage are not applicable. Not a word about that. And the district court also did not distinguish why scaling was not applicable. Did it construe the word permitted? I thought it did. Am I misremembering that? That may be just in the briefing. Did the district court construe the word permitted in the denial letter? No. I see. That's just in the briefing. That's in the briefing. Did you raise that issue below? Yes, on page, I think it's seven and eight of our memorandum in support of our motion for summary judgment. We raised this whole issue, including the rule that says they have to put everything in. Did you raise it in opposition to their motion for summary judgment? Well, I raised it in support of our motion for summary judgment, saying this is not a tact that could be taken. Just to be clear, I take it you didn't raise it in your motion? I don't remember whether we put it in response to their motion, but it certainly was in our motion for summary judgment in the memo we cited in support of our motion for summary judgment. And the district court didn't say in denying our motion why this rule didn't interfere with her denial of it. Because my view of the statute was correct in how it had to be read. I mean, this is maybe, I'll just give you a chance to answer it. If it's not in your motion opposing their motion for summary judgment, and it is in your motion for seeking summary judgment, since we can review de novo whether you'd be entitled to summary judgment as opposed to it being a debatable matter of fact, we could still affirm the denial of your motion to summary judgment, even accepting this issue. What would that mean, then, for the question of whether this issue is live as to the denial, as to the grant of their motion for summary judgment? Do you follow? I'm sorry, Your Honor, I am not following. I'm not understanding what you're asking. Well, they're not symmetrical. If you move for summary judgment, it has to be beyond dispute that you're right. So we can affirm the district court on the ground if we thought the record shows it's just a debatable fact. You wouldn't be entitled to summary judgment even if everything you said about what you said about scaling were otherwise true. Then separately we have before us the grant of summary judgment to them. Did you oppose summary judgment to them on the ground that? Again, Your Honor, I can't remember whether we included it in the briefing on that issue, on opposing their summary judgment. Then we'd be on plain error if you didn't raise that issue to them there, or is that wrong? I think that would be wrong, Your Honor. I think it would be wrong to permit them to do something that clearly they are entitled to. And to profit from that. To basically commit what is a violation of rules that they have to adhere to in applying for a denial, for issuing a denial. And then to say, well, okay, you violated the rules for what you're supposed to do, but now we're going to let you succeed on that issue. Anything further? Thank you. Thank you, counsel. At this time, counsel for National Union Fire Insurance Company can introduce herself on the record to begin. May it please the Court, Elizabeth Ahlstrom on behalf of the defendant, National Union Fire Insurance Company. Just to start with the waiver issues that Your Honors have been raising. First, plaintiffs never raised a full law in opposition to our motion for summary judgment that there was a question of facts. Both parties have always taken the position that these were legal issues that could be decided as a matter of law in their favor. I would also go back to... A plaintiff's statement of disputed facts in response to your summary judgment motion. What was that? What was their statement of disputed facts? They did dispute some of our material facts, but most of the facts they said were immaterial to the case. Their whole position really is just simply that... And didn't they tell the Court your denial letter was ineffective to preserve your argument, your coverage defense? They did argue the waiver issue, but they didn't argue it from the sense that it raised a question of facts that would prohibit summary judgment. They just raised it as we waived the issue. The statute must apply because we didn't specifically reference the word statute. Because they included it in their motion for summary judgment, not in opposition to your motion for summary judgment. Is that the reason? Well, you have to view all of these issues in context. The plaintiffs have always just taken the position that the statute applies and therefore... There's two different things going on. There's that issue and there's the scaling issue. Scaling issue stands independent of that other issue, right? Yes and no. Plaintiffs in their request for UIM coverage specifically acknowledged the fact that the policy as issued did not have Rhode Island UMUIM coverage in it. And they argued in their letter that by operation of the statute, there had to be coverage and that that coverage could not be rejected because First Student had more than the minimum limits. We responded to that and said, there is no Rhode Island UIM coverage because First Group rejected it as they were entitled to do. When you read the two letters collectively, there's no other way to read National Union's letter than to say that they were entitled to do it because your argument on the statute is incorrect. I thought all of the burden of their other evidence was to create a question as to whether you just were wrong. In thinking that you could reject it on the ground that you gave. It's true that the premise of that is that they think the statute applies. But in response, the letter doesn't say the statute does not apply. It just says it's permitted. Then they have all this testimony. This person didn't read it. This person had a misunderstanding. All of that would be the kind of thing a jury could then look at and see, does this denial letter in saying permitted mean the statute doesn't apply? Or does it mean even assuming it applies, it was permitted to reject it? Of course, they win if it's the latter. But they want that issue before a jury, presumably. That's why they raise all that testimony. Well, if that's their position on appeal, they certainly didn't articulate it that way to the district court. That argument was never made to the district court. It was simply they didn't raise the statute. They waived the statute. The statute applies. You have to reform the policy to have $5 million in limits. What's wrong with that argument? As I understand their argument, you're now saying we should rule for you because the policy was not delivered in Massachusetts. In Rhode Island. And they're saying you didn't say that in your denial letter. So therefore, under a scaling, you lose. That's their argument as I now understand it. Respectfully, we disagree that when you read the letters in context, that a reasonable reading of our disclaimer letter would not have put them on notice, that our position was that the rejection of the UMUAM was permitted by law. The law being the statute. And I understand you're saying the letter did preserve the defense. If it didn't, do you lose? No, because the letter doesn't change the statute. So to invoke the statute, you still have to fall within the statute. But scaling, I thought, suggests it doesn't matter. You can waive a legal argument. Respectfully, scaling was a bad faith case. The coverage had already been found. There's ample Supreme Court authority from Rhode Island that says you can't create coverage in the first instance by issues of waiver and estoppel. So the arguments that plaintiff's raising, we would only get to if we got to the bad faith elements of this case. And we are nowhere near the bad faith elements of this case. They first have to establish the breach of contract. And so here, we don't get, they haven't proven that case. And so therefore, we never get to the scaling piece of it. Is my time up? No, you have three minutes. How do you never get to the scaling unless we agree with you that the denial letter should be read as invoking the delivery defense? Again, the statute says what the statute says. The statute only applies to policies that are issued for delivery in Rhode Island. Sure, a policy could say what a policy could. I mean, the scaling is not an unusual law. A lot of states, if the denial letter doesn't raise a defense, then the insurer is out of luck. That's why denial letters are so often so long. Well, it also depends on how you look at the defense. This isn't an exclusion. This isn't a condition to the policy. This is actually what is covered within the scope of the policy. And many times, that is not something that's waivable. That is not something that estoppel applies to. And so when we're looking at what coverage there is in the policy, that is what it is. And plaintiffs have to show that their loss falls within that. That's not something that can be waived. Our position is that the statute doesn't apply to the policy. And so therefore, it was completely permissible for a first group to reject Rhode Island UM-UIM coverage. And only if the policy was delivered to issue for delivery in Rhode Island, and the statute applied, would it have been impermissible for a first student to reject the coverage. Impermissible. So you're saying the first student was offered the coverage and rejected it? Right. This isn't a situation where the formalities of the process weren't followed. And that's because, as is reflected in our undisputed facts and the affidavit of our underwriter, is that the process is to have insurers like this that are operating in multiple states to fill out the rejection forms in all the states that they're operating. Because quite clearly, they could have opted to buy more coverage than they're statutorily required to buy. So this is the process that is used. And so they chose to reject this coverage. How do we deal with scaling? I'm thinking of a denial letter that says, we're denying this because the policy doesn't cover it. I would assume that would be no good under scaling, because it is just so conclusory. Due to a lack of specificity? Yeah. Because otherwise, you could have one one-sentence denial letter for every case in Rhode Island that just says it doesn't cover it. Respectfully, we believe that our letter did have enough specificity. How does it go beyond that, where it seems instead of saying it doesn't cover it, it says it doesn't have it, as we're permitted to do, without explaining why you're permitted to do it? Again, read in context that the demand for UIM coverage, which clearly invoked the statute to manufacture the coverage that didn't otherwise exist. But the fact issue I think they're trying to create is whether a jury could find, maybe that's a reasonable way to read them together, but maybe a jury could find, no, the insurance company thought that the statute, there's no statement ever from the insurance company saying the statute doesn't apply, right? In the letter? Yeah, or in anything up at the time of that exchange. That was really the only exchange pre-suit, but the letter, the response letter by the insurance company does not say the word, the statute doesn't apply. But it was responding to plaintiff's letter that said there's no Rhode Island UIM coverage, but there has to be because of the statute. And so when you read them in context, our position is that there is only one reasonable interpretation. Reasonable might not disagree, and also from our position, this wasn't raised as a question of act below. One last question, can you just tell me on your reading of issued for delivery, what policy is it serving? Not insurance policy. What thing in the world is made better by having your reading of issued for delivery? Is there anything that is sensible about it? I mean, I understand the textual point, and then you say there's some compromise in public choice theory or whatever, but is there a reason any sensible legislature would want to have the system you say the text requires? I think it's to allow some flexibility between where the policy is actually delivered, which here in this case we know it was in Ohio, and by parties, I mean the parties to the contract intend the policy to be delivered. So for example, if we deliver it to, in this case, their broker was in New York, but they're not in New York, they're in Ohio. But I guess why in general would they want it to be where the policy is delivered to, independent of the realities of where they're operating and where the coverage will be? Is there some reason why the place of delivery would be a sensible thing to make the whole statute turn on? From the legislature's perspective? I think to be consistent with the party's intent. Because delivery can be just actual delivery. I mean, this is how this case sort of evolved, right? The original assumption by plaintiffs was that this had to have been a policy that was issued in Rhode Island. That's not the case. It was issued and delivered in Ohio. There are certain policies that only become effective upon delivery. This isn't one of those types of policies. So there's more flexibility to just be consistent with the party's intent. Thank you. Thank you, counsel. At this time, it's counsel for First Student. Good afternoon, Your Honor, and may it please the Court. Christina Holtman for First Student, Inc. If I may just speak to the last question that you directed to counsel for National and Union. Why even have a delivery requirement at all? That reason would obviously be known to the legislature. They could have, and they do in other portions of the statute, require all vehicles registered in Rhode Island to have liability coverage or some financial... I understand that point, but is there a reason why requiring it tied to delivery makes sense? Because it's the intention of the parties to the policy at the time. They could have expanded the scope. Plaintiffs' counsel directed you towards rules regarding any insurers doing business in the state. They could have had that language in there. I guess I'm really asking... I understand the text, and it makes sense. And it's different than other texts, and other texts is broader. So that's its own logic. But is there some reason why a sensible legislature would want to tie the UIM-UM rule to the completely adventitious state of the PO box of the recipient? I think it's stability and predictability for the insurers, Your Honor. There are obviously other statutes referred to in cases cited by plaintiffs where there's an issue for... without the garage requirement, because it's talking about attorney's fees. It's not every insurance policy issued in this country or every insurance policy issued to a Rhode Island vehicle. We're limiting the scope for the predictability of the insurance party... or the insurance company, I would argue, Your Honor. As for the waiver issue, which was the focus of plaintiffs' counsel's argument, as a matter of record, plaintiffs... first students only have parties to count three, the DJ count. The scaling rules or the rules about denial letters that apply to insurance companies certainly don't apply to first students. And the demand letter was not addressed to first students, although they did receive a copy, but it certainly wasn't responded to by first students. So that waiver argument that plaintiffs' counsel focused on didn't apply. Plaintiff has tried to, throughout the course of this case, conflate the scope of the inquiry to the entire insurance universe or the entire first student universe. What is before this court is one policy and one policy only, and that's 192.1809, and what coverage is afforded under that policy. Although briefly, in their briefs before this court, they somehow argued that the contract is ambiguous. That certainly wasn't something they argued before, and for the reasons cited in our brief, that contract isn't ambiguous. The only other inquiry for the court, then, is whether the statute requires that there be such coverage. If the statute doesn't apply, and the policy is in conformance with the statute for that reason, there is no coverage, and the motion for summary judgment, or the granting of the motion for summary judgment, has to be affirmed. So the only issues are, is there insurance coverage within the policy? And the answer is no. And does the statute apply such that the policy must be reformed? And I know Your Honor was well-versed on the textual issues, if you had any questions about that. However, Plaintiff's counsel now argues that, well, we must have intended to go purchase it because we had these other contracts. That's not relevant to the issue of what coverage is provided under 192.1809. That isn't germane to the issue of what the legislature intended in including a delivery requirement in that statute, or issued for delivery requirement in that statute. Not to be glib about it, Your Honor, but if my son asks me for a glass of milk, and I tell my husband I'm going to go to the store to buy milk, and I leave the house intending to go buy milk, when I get to the store, I tell the shopkeeper I want a loaf of bread, my son might be upset, my husband might ask me to go back to the store, but that bread doesn't suddenly become milk. Any intent or those other contracts can affect, those unilateral acts by First Student, can affect the coverage in the policy that was issued by National Union. Thank you. Unless Your Honors have any questions. Thank you. Thank you, Counsel. That concludes our argument in this case.